The order appealed from must be affirmed, with costs and disbursements.

BRADY and DANIELS, JJ., concur.

---

PEOPLE *ex rel.* CLARSON *v.* FRENCH *et al.*, Police Commissioners.

(*Supreme Court, General Term, First Department.* June 19, 1888.)

MUNICIPAL CORPORATIONS—DISMISSAL OF POLICE OFFICER—CERTIORARI TO REVIEW.
    On *certiorari* to review the decision of the police commissioners dismissing the relator from the police force of New York city, it appeared that the dismissal was for an altercation between the relator and a brother officer, in the public streets. The preponderance of proof showed that the relator was less to blame in the matter than the other officer, who was only fined 30 days' pay. The relator had been commended for bravery and good conduct in making an important arrest under highly dangerous circumstances. *Held,* that, as the punishment was too harsh and unequal, the decision should be reversed, and the cause remanded for further action.

On *certiorari.*

Writ of *certiorari* on the petition of Lawrence Clarson to review the decision of Stephen B. French and others, police commissioners, dismissing the relator from the police force of New York city.

Argued before BRADY, P. J., and DANIELS and BARTLETT, JJ.

*John M. Tierney,* for relator.    *William L. Turner,* for respondent.

DANIELS, J.   The charge against the relator was that on the 28th of December, 1887, he engaged in a fight with Patrolman James J. Murray, at the south-west corner of One Hundred and Twenty-Sixth street and Third avenue, in which they assaulted each other with their fists.   A like charge was made against Officer James J. Murray, and upon the evidence taken in support of the charges each of the officers was found guilty, and Murray was fined 30 days' pay, which was forfeited and withheld, amounting to $92.62.   In the case of the relator, who was dismissed from the force by the unanimous vote of the commissioners, a writ has been issued in his behalf to review the proceedings upon the hearing, on the ground that there was such a preponderance of proof against the existence of the facts found by the commissioners as entitled him to a reversal of the decision under subdivision 5, § 2140, Code Civil Proc.   This is substantially the objection taken in support of the writ issued in the proceeding.   It appeared that these two persons met at the place mentioned in the charge, and that an altercation took place between them in which one or more blows were passed.   This originated in the circumstance that some person had written upon the wall of the station-house derogatory reference to the sister and wife of Officer Murray.   A suspicion arose that this had been done either by the relator or Officer O'Leary.   The latter denied his participation in the writing to Murray, and that seemed to have satisfied him of O'Leary's innocence.   The relator also, at another time, made the same denial, but this did not end the ill feeling or resentment which had arisen out of the fact of the writing between these officers, and when they met at or near the place where the quarrel occurred, the relator denounced to Murray any person who accused him of that writing as a liar.   That appeared from his own statement in the course of the proceeding.   Murray's statement was that Clarson added another offensive statement to the one just mentioned, and then

hauled off and made a pass at Murray, who stated that he walked away, and was followed by the relator, calling him vile names, and striking at him again, the blow glancing on the side of his face. Then Murray states that he threw up his hand to guard against the blow, and strike out in his self-defense. He does not admit striking the relator, but says that the sidewalk was slippery and the relator fell. Then his testimony is that he crossed the street after some other words had passed, and the relator tried to go ahead of him to strike him, but was brought back by the other officers. The relator denies the greater part of the statement made by Murray, and added, after stating that "anybody who accused him of the writing was a liar," that Murray struck him, and that he had a black eye for seven days. As to the fact that Murray did strike the relator, the statement of the by-standers, received by the commissioner who took and reported the evidence to his associates, corroborates what was said by the relator. This statement was that, "while the relator was talking to a fellow-officer, Murray came up and deliberately struck Officer Clarson in the face, causing the blood to gush from his nose. I took notice that the man who was assaulted wore three service stripes." The evidence of Officer O'Leary is corroborative of the truth of the statements of the relator, for he testified that, when he discovered these two officers in hot words, he passed between them, and then they came close together again with their hands up, and he saw Murray strike Clarson on the face, and knock him down, and after that he was bleeding. He also contradicts the statement made by Murray as to the latter having been struck, or struck at, by the relator. He says that but one blow was struck, and that relator had been struck, and that blood had been produced by the blow, was clearly proved by the evidence taken before the commissioner. Other officers, together with another individual, were present during the progress of the quarrel between these two men. Officer F. Costa says that he saw Clarson raise his hand, but whether he struck Murray or not he did not know, and after that he saw Clarson go down on one knee; that the officers were then separated, and Murray went towards home. Clarson followed him, and said he would do so until 6 o'clock, when he would get even, but he followed him no further than across the avenue, when he returned to the corner of One Hundred and Twenty-Fifth street. He could not testify that any blow was struck, but he saw Clarson go partly down on one knee, and fall partly against the window of a bakery. The testimony of Officer Meehan was very much the same. He saw no blows struck, but saw Clarson go down, and get up afterwards. He said, "this man [meaning Clarson] kind of fell down." Patrick Daly merely observed the fact that Clarson had his handkerchief filled with blood, while neither Officers Gregory or Ross gave any important evidence in the proceeding. After the blow was struck, the fact is quite clearly indicated from the testimony of the witness whose attention was directed to it, that Murray was disposed to walk away, and that the relator followed him up; but, according to the same evidence, he proceeded but a short distance, no further probably than across the avenue, before he returned. From this evidence it is reasonably clear that each of these persons was about equally in fault in bringing about the altercation and the blow which was struck. Neither was entitled to any special discrimination in his favor, but each appeared to be equally deserving of reprimand and punishment. That which was inflicted upon Murray may be assumed to have been adequate for the correction of the misconduct under the circumstances, and if no greater punishment had been imposed upon the relator no disposition would arise for interfering with the conclusion of the commissioners. But it appeared as a matter of fact that the relator had long been in the police service, and had been commended for bravery and good conduct in making a very important arrest, under highly dangerous circumstances; and for yielding to his resentment under the disagreement which had arisen, it was too harsh a measure of punishment to dismiss him finally from the police force. Each of the officers was

equally liable to censure and punishment, and that which was deemed and ap-
pears to be commensurate with the offense of Murray was equally so for the
misconduct of Clarson. The order of the commissioners dismissing the latter
from the force should be reversed, and the case remitted to the commissioners
for further consideration and action, concerning the misconduct of the relator
on this occasion.

BRADY and BARTLETT, JJ., concur